**FILED**

JAN 1 1 2010

Clerk, U.S. District and
Bankruptcy Courts

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SHARON M. ROLLINS, Individually and as )
Personal Representative for the ESTATE OF )
DEVIN DARRELL BAILEY, )
826 Varnum Street, N.W. )
Washington, DC 20011 )
                                   )
Plaintiff, )
                                     )
                v. )

WACKENHUT SERVICES, INC. )
7121 Fairway Drive, Suit 301 )
Palm Beach Gardens, FL 33418-3766, )

OTSUKA AMERICA PHARMACEUTICAL, INC. )
2440 Research Boulevard, )
Rockville, MD 20850, and )
                                     )
BRISTOL-MYERS SQUIBB COMPANY )
345 Park Avenue )
New York, NY 10154 )
                                     )
Defendants. )

Case: 1:10-cv-00047
Assigned To : Kennedy, Henry H.
Assign. Date : 1/11/2010
Description: PI/Malpractice

*JURY ACTION*

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants Otsuka America
Pharmaceutical, Inc. ("OAPI"), and Bristol-Myers Squibb Company ("Bristol-Myers"), by
undersigned counsel, with the consent of Defendant Wackenhut Services, Inc. ("WSI")[1]
(collectively, "Defendants") hereby remove to this Court a civil lawsuit filed in the Superior
Court for the District of Columbia. As grounds for removal, Defendants state:

    1.    Plaintiff commenced this action on December 8, 2009, by filing a complaint
against Defendants in the Superior Court for the District of Columbia. Plaintiff's Complaint was

---

[1] WSI has signed a consent to remove this case to this Court from the Superior Court for the
District of Columbia. *See* Ex. 1.

assigned Case No.: 2009 CA 009131 B (hereinafter the "State Court Action").  Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of the Complaint is attached as Exhibit 2.

2.      Defendants OAPI and Bristol-Myers were served with the Summons and Complaint and Initial Order and Addendum ("initial order") from the State Court Action on December 21, 2009.  Defendant WSI was served with the initial order on December 24, 2009.  Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of each summons and initial order is attached as Exhibit 3.

3.      No other process, pleadings, or orders have been served by or upon Defendants in the State Court Action.

4.      Pursuant to 28 U.S.C. § 1446(b), Defendants timely file this Notice of Removal within thirty (30) days after Defendants were served with a copy of the Plaintiff's Complaint.

5.      Pursuant to 28 U.S.C. § 1446(d), Defendants will immediately after filing this Notice give written notice thereof to all adverse parties and will file a copy of this Notice with the clerk of the Superior Court for the District of Columbia.

6.      This action is removable under 28 U.S.C. § 1332 and 28 U.S.C. § 1441 because the action is between citizens of different states and the amount in controversy exceeds $75,000.  All defendants named in this action consent to this removal.

7.      As noted in the caption of Plaintiff's Complaint, Plaintiff's address is within the District of Columbia.  Upon information and belief, Plaintiff is a citizen of the District of Columbia.  Defendant WSI is a Florida corporation with its principal place of business in the State of Florida.  Defendant OAPI is a Delaware corporation with its principal place of business in the State of Maryland.  Defendant Bristol-Myers is a Delaware corporation with its principal place of business in the State of New York.  Complete diversity therefore exists among the parties and none of the defendants are citizens of the District of Columbia.

2

8. Plaintiff demands judgment in the amount of one million dollars from each Defendant and additionally seeks three million dollars in punitive damages from WSI. The amount in controversy therefore exceeds $75,000.

WHEREFORE, Defendants OAPI and Bristol-Myers respectfully request that this Notice of Removal be accepted and that the State Court Action be removed to the United States District Court for the District of Columbia.

Dated: January 11, 2010

Respectfully submitted,

Timothy M. Broas (#391145)
Adam S. Nadelhaft (#490124)
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: tbroas@winston.com

*Attorney for Defendant Otsuka America Pharmaceutical, Inc.*

Daniel S. Pariser, Esq. (#464744) (*by permission As N*)
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Tel: (202) 942-5000
Fax: (202) 942-5999
Email: Daniel.Pariser@aporter.com
*Attorney for Defendant Bristol-Myers Squibb Company*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2010, I caused the foregoing document to be served

on counsel for all parties:

> Gregory S. Smith
> Law Offices of Gregory S. Smith
> 913 East Capitol Street, S.E.
> Washington, DC 20003
> Tel: (202) 460-3381
> Email: gregsmithlaw@verizon.net
> ***Attorney for Plaintiff***


> Daniel S. Pariser
> Arnold & Porter LLP
> 555 Twelfth Street, NW
> Washington, DC  20004-1206
> Tel: (202) 942-5000
> Fax: (202) 942-5999
> Email: Daniel.Pariser@aporter.com
> ***Attorney for Defendant Bristol-Myers Squibb Company***

> Matthew W. Carlson
> Thompson O'Donnell, LLP
> 1212 New York Ave., N.W.
> Suite 1000
> Washington, D.C. 20005
> ***Attorney for Defendant Wackenhut Services, Inc.***


> Adam S. Nadelhaft (#490124)
> Winston & Strawn LLP
> 1700 K Street, NW
> Washington, DC 20006-3817
> Tel: (202) 282-5000
> Fax: (202) 282-5100
> Email: tbroas@winston.com

DC:627374.6

# EXHIBIT 1

10 0047
FILED
JAN 1 1 2010
Clerk, U.S. District and
Bankruptcy Courts

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHARON M. ROLLINS, Individually and as Personal Representative for the ESTATE OF DEVIN DARRELL BAILEY, 826 Varnum Street, N.W. Washington, DC 20011<br><br>Plaintiff,<br><br>v.<br><br>WACKENHUT SERVICES, INC. 7121 Fairway Drive, Suit 301 Palm Beach Gardens, FL 33418-3766,<br><br>OTSUKA AMERICA PHARMACEUTICAL, INC. 2440 Research Boulevard, Rockville, MD 20850, and<br><br>BRISTOL-MYERS SQUIBB COMPANY 345 Park Avenue New York, NY 10154<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. _____**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CONSENT TO REMOVAL

Defendant Wackenhut Services, Inc. hereby consents to removal to this Court the civil lawsuit filed by Plaintiff Sharon M. Rollins in the Superior Court for the District of Columbia, which was assigned Case No.: 2009 CA 009131 B.

Respectfully submitted,

*Matthew W. Carlson*   R4N
Matthew W. Carlson
Thompson O'Donnell, LLP
1212 New York Ave., N.W., Suite 1000
Washington, DC 20005
(202) 289-1133
***Attorney For Defendant Wackenhut Services, Inc.***

# EXHIBIT 2

10 0047

# FILED

JAN 1 1 2010

Clerk, U.S. District and
Bankruptcy Courts

# Superior Court of the District of Columbia

CIVIL DIVISION – CIVIL ACTIONS BRANCH

SHARON M. ROLLINS, Individually and as )
Personal Representative for the ESTATE OF )
DEVIN DARRELL BAILEY, )
826 Varnum Street, N.W. )
Washington, DC 20011 )
)
    Plaintiff, )
)
v. )
)
WACKENHUT SERVICES, INC. )
7121 Fairway Drive, Suite 301 )
Palm Beach Gardens, FL 33418-3766 )
Serve: Prentice-Hall Corporation System, Inc. )
      1090 Vermont Ave., N.W. )
      Washington, DC 20005, )
)
OTSUKA AMERICA PHARMACEUTICAL, INC. )
2440 Research Boulevard, )
Rockville, MD 20850 )
Serve: CT Corporation System )
      1015 15th Street, N.W., Suite 1000 )
      Washington, D.C. 20005, and )
)
BRISTOL-MYERS SQUIBB COMPANY )
345 Park Avenue )
New York, NY 10154 )
Serve: CT Corporation System )
      1015 15th Street, N.W., Suite 1000 )
      Washington, D.C. 20005 )
)
    Defendants. )

RECEIVED
CIVIL CLERK'S OFFICE
DEC 0 8 2009
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC

Civil Action No.

0009131-09

## COMPLAINT

COMES NOW Sharon M. Rollins, Individually and as Personal Representative for the

Estate of Devin Darrell Bailey, ("Plaintiff"), by and through undersigned counsel, and files this

Complaint and seeks judgment against Defendants Wackenhut Services, Incorporated, Otsuka

America Pharmaceutical, Incorporated, and Bristol-Myers Squibb Company, hereinafter referred
to as "Defendants", on the grounds and in the amount of damages as hereinafter set forth.

### Parties

1.       Plaintiff Sharon M. Rollins is the mother of the late Devin Darrell Bailey, who
was 23 years old at the time of his death. Plaintiff Sharon M. Rollins is also the Personal
Representative of Devin Darrell Bailey's Estate. Plaintiff Sharon M. Rollins brings this action in
her capacity as the Personal Representative of her son Devin Darrell Bailey's Estate, and on her
own behalf under the District of Columbia Wrongful Death Act, D.C. Code § 16-2701, *et seq*.
Moreover, Plaintiff Sharon M. Rollins brings a survival action on behalf of her son Devin Darrell
Bailey's Estate under District of Columbia Code § 12-101, *et seq*.

2.       Defendant Wackenhut Services, Inc. ("Wackenhut Services") is a for-profit
business corporation, incorporated in the State of Florida, and registered to do business in the
District of Columbia. Defendant Wackenhut Services was formed in 1960 as a subsidiary of The
Wackenhut Corporation ("Wackenhut"). Wackenhut Services describes itself as having an
"expansive presence," and approximately 1000 employees, in the National Capital Region,
which includes the District of Columbia. Defendant Wackenhut Services may be properly
served in this case by delivering a copy of the summons, complaint and initial order to Prentice-
Hall Corporation System, Inc., 1090 Vermont Avenue, N.W., Washington, D.C. 20005.

3.       Defendant Otsuka America Pharmaceutical, Inc. ("Otsuka America") is a for-
profit business corporation, incorporated in the State of Delaware, and registered to do business
in the District of Columbia. Otsuka America is a subsidiary of Otsuka Pharmaceutical Company,
Ltd. ("Otsuka"), based in Tokyo, Japan, which is a wholly-owned subsidiary of Otsuka Holdings
Company, Ltd., the holding company for the Otsuka Group. The Otsuka Group comprises 153

2

companies and employs approximately 36,000 people in 23 countries and regions worldwide; Otsuka and its consolidated subsidiaries earned $9.7 billion in annual revenues in fiscal year 2008. ABILIFY® (aripiprizole), an atypical antipsychotic that is the first and only available dopamine partial agonist, is a pharmaceutical drug that works by changing the actions of chemicals in the brain; it was discovered by Otsuka. Defendant Otsuka America, established in 1989 and a part of the Otsuka Group, is responsible for Otsuka's pharmaceutical commercial activities in North America. Defendant Otsuka America may be properly served in this case by delivering a copy of the summons, complaint and initial order to CT Corporation System, 1015 15th Street, N.W., Suite 1000, Washington, D.C. 20005.

4.      Defendant Bristol-Myers Squibb Company ("Bristol-Myers") is a for-profit global biopharmaceutical corporation, organized in the State of Delaware and registered to do business in the District of Columbia. At all times pertinent to this Complaint, Defendant Bristol-Myers has been a collaborative partner with Otsuka and/or Ostuka America in the development and commercialization of ABILIFY® in the United States. Brisol-Myers listed ABILIFY® as its second largest-selling product in 2008, with $2.2 billion in sales. Defendant Bristol-Myers may be properly served in this case by delivering a copy of the summons, complaint and initial order to CT Corporation System, 1015 15th Street, N.W., Suite 1000, Washington, D.C. 20005.

### Jurisdiction

5.      This Court has subject matter jurisdiction over this action pursuant to D.C. Code § 11-921. This Court has personal jurisdiction over Defendants Wackenhut Services, Otsuka America and Bristol-Myers pursuant to the District of Columbia's long-arm statute, D.C. Code § 13-423(a), as well as under D.C. Code § 13-334.

3

## Statement of Facts

6.      Defendant Wackenhut Services is government contractor which describes itself as one of the largest security companies in the United States, and as the leading provider of security services to the United States Government.  Wackenhut Services states that it "pioneered the privatization of public services traditionally performed by local, state and federal governments," and states that it employs "more than 6000+ protective force personnel who are deployed at more than eighty individual government and commercial contracts spread across our nation and off-shore."  Wackenhut Services performs various protective services for a large array of U.S. Government agencies and corporations, including providing uniform guard services – both armed and unarmed.

7.      Prior to and during December 9, 2008, Defendant Wackenhut Services was responsible for providing the U.S. Army with uniform guard services at the Walter Reed Army Medical Center (WRAMC), located at 6900 Georgia Avenue, N.W., in Washington, D.C.

8.      On information and belief, Wackenhut Services is paid and reimbursed for the protective services that it provides to the U.S. Government, and which it provided during 2008 to the U.S. Army at WRAMC, at a higher hourly rate for armed guards than for unarmed guards.

9.      One of the persons Defendant Wackenhut Services hired as an armed guard to meets its contract at WRAMC was Decedent Devin Darrell Bailey.

10.     Devin Darrell Bailey ("Devin Bailey") was born on March 16, 1985.  Prior to his death at age 23, Devin Bailey studied voice and drama at the Thomas Pullen Middle School for the Performing Arts.  Devin Bailey later attended high school in Washington, D.C. and graduated from its Theodore Roosevelt Senior High School (TRSHS) with a major in communications, in 2003.  While in high school, Devin Bailey received several awards from TRSHS's School of

Communications, including Outstanding Community Service Awards following his internship with DC28 DCPS Cable Television and work at DCTV Public Access Television, and for serving as Intern and Narrator for the Multimedia Training Institute's W.A.Y. TOO COOL TO SMOKE documentary.  Devin Bailey also received a Certificate of Achievement and Outstanding Community Service Award as Videographer and Director of D.C. "Student Voices," a project of the School of Media and Public Affairs at George Washington University.

11.    Following his graduation from TRSHS in 2003, Devin Bailey was admitted to and attended Pennsylvania State University.  After spending approximately two years at Penn State, however, Decedent Bailey ultimately withdrew from college after suffering from increased depression and serious mental health problems.

12    On July 13, 2006, Devin Bailey joined the U.S. Navy, and he entered active duty in Baltimore, Maryland, after which he was assigned to duty at the Recruit Training Command in Great Lakes, Illinois.  A few days later, on July 17, 2006, Decedent Bailey was psychiatrically hospitalized on an emergency basis at the inpatient psychiatric clinic at the North Chicago VA Hospital, described as confused and psychotic, and unable to function.  Two days later, on July 19, 2006, Devin Bailey's administrative separation from the U.S. Navy was recommended, after he was diagnosed as having mental disorders that included "psychosis."  Devin Bailey's separation from the U.S. Navy was formalized the following month, on August 23, 2006, in a Certificate of Release or Discharge from Active Duty that noted that he was "discharged" due to "failed medical/physical procurement standards," with separation code "JFW," indicative of a medical condition disqualifying for military service.  The form also indicated a request that a copy of Devin Bailey's discharge papers be sent to the DC Director of Veterans Affairs.

5

13.     On April 16, 2007, D.C. Metropolitan Police were called to 826 Varnum Street, N.W., Washington, D.C. 20011, after receiving radio reports of a family disturbance in progress. Plaintiff Sharon M. Rollins had earlier tried to get an ambulance to take her son, Devin Bailey, to a mental hospital for inpatient treatment, but she was told that without her son's consent, the only way to transport her son to a mental hospital was to call the police, which she then did.

14.     Upon their arrival, Metropolitan Police observed Devin Bailey on the front porch with his mother. When officers attempted to interview Devin Bailey, he became argumentative, and resisted. Further efforts to restrain Devin Bailey met with increased resistance, including kicking one officer in the right leg. Once restrained, a search incident to his arrest revealed an 8-inch knife in Devin Bailey's right jacket pocket.

15.     Devin Bailey was formally charged with three criminal offenses, including two charges of assault on a police officer, and one count of carrying a dangerous weapon. Devin Bailey later appeared in D.C. Superior Court, where he was detained. The Court initially issued an order requesting competency screening, to determine if Mr. Bailey was mentally able to stand trial on his criminal charges. On June 26, 2007, the assigned physician reported that Devin Bailey refused to leave the Mental Health Treatment Unit cellblock where he was being held for his competency interview, and also noted that Devin Bailey had been uncooperative during two competency examination attempts made during May 2007. The D.C. Superior Court, on July 12, 2007, then issued a formal Mental Examination Order, committing Devin Bailey on an inpatient basis to the St. Elizabeth's Hospital, for a full competency evaluation.

16.     Devin Bailey was then formally admitted to St. Elizabeth's Hospital, pursuant to the Court's commitment order, on July 18, 2007. He advised the intake nurse that, "I need some help." During his examination, changes in his mental health in the year or more since he had

6

attended college were noted. Patient records reveal that Decedent Bailey had recently been unable to care for himself, was socially isolated, had refused to bathe or change his clothes for a period of months, and was also talking to himself. Records revealed the patient's acknowledged depression for a period of three years, including his discharge from the U.S. Navy after a few weeks for being "psychotic." Decedent Bailey also advised medical examiners how he was staying awake at night to "avoid nighmares." Auditory hallucinations were noted, as well as the fact that he was visually "seeing bad stuff." Decedent Bailey denied any suicidal or homicidal ideations, but St. Elizabeth's Hospital ultimately recommended that his inpatient status continue on an involuntary basis.

17.     Doctors at St. Elizabeth's Hospital diagnosed Devin Darrell Bailey as having "Bipolar Disorder, Most Recent Episode Mixed, Severe with Psychotic Features." On August 8, 2007, Defendant Devin Darrell Bailey was given prescription medications Rispardal and Depakene, and was discharged from St. Elizabeth's Hospital, after being held there, under the court's order and involuntary commitment on an inpatient basis, for approximately three weeks.

18.     Following his release from St. Elizabeth's Hospital, Devin Bailey attempted to continue to pursue employment opportunities. During February and March of 2008, Devin Bailey successfully passed a 60-hour course in Basic Real Estate Principles and Practices, which he took at Montgomery College in Montgomery County, Maryland.

19.     During 2008, Devin Bailey also took and passed a written entrance examination for a position as a firefighter/EMT in Fairfax County, Virginia. He also eventually received a certificate from the Fairfax County Fire & Rescue Department, advising him of his successful completion of their Firefighter Candidate Physical Ability Test.

20.     Devin Bailey also worked and earned wages during the Summer of 2008, as a lifeguard at the Belford Towers Apartments for his employer, Winkler Pool Management, Inc.. During the Summer of 2008, Winkler's President, Douglas S. Winkler, wrote a letter to Devin Bailey, explaining how the Belford Towers property manager had complemented Devin for rescuing a six-year old boy who had slipped into the shallow end after playing around the pool, and stated that Devin Bailey "should be recognized for saving a child's life." Mr. Winkler noted that "we are all extremely proud to have a lifeguard such as yourself working with us at Winkler Pool Management, Inc., and hope that you will continue with us for many seasons to come."

21.     During 2008, Devin Bailey's mental health challenges continued, however, and on May 14, 2008, Devin Bailey voluntarily admitted himself into the Washington Adventist Hospital in Takoma Park, Maryland, on an inpatient basis for help and treatment, following an emotional crisis prompted by stress. During his time spent at Washington Adventist Hospital, Devin Bailey was prescribed and given ABILIFY®, apparently for the first time.

22.     On information and belief, starting in at least 2002, Defendant Bristol-Myers, joined by Otsuka America, had knowingly and willfully offered and paid remuneration in the form of consulting arrangement fees to physicians to induce them to prescribe ABILIFY®, including, at least during certain points of time, prescriptions for off-label uses not approved at the time of such promotions.

23.     On information and belief, ABILIFY® promotional efforts directed at prescribers continued, despite the fact that, at the direction of the U.S. Food & Drug Administration, ABILIFY®'s prescribing information contains a black-box warning, that "Children, adolescents, and young adults taking antidepressants for major depressive disorder (MDD) and other psychiatric disorders are at increased risk of suicidal thinking and behavior. (5.2)" The

referenced Section 5.2 warns further of the "long-standing concern" that drugs of this type "may

have a role in inducing worsening of depression and the emergence of suicidality in certain

patients during the early phases of treatment," based on "[p]ooled analyses of short-term

placebo-controlled trials" of such drugs, which "showed that these drugs increase the risk of

suicidal thinking and behavior (suicidality) in children, adolescents, and young adults (ages 18-

24) with M[ajor] D[epressive] D[isorder] and other psychiatric distorders." The warning further

states that patients placed on such therapy should be "monitored appropriately and observed

closely for clinical worsening, suicidality, or unusual changes in behavior, especially during the

initial few months of a course of drug therapy, or at times of dose changes, either increases or

decreases." "Families and caregivers of patients being treated with antidepressants for major

depressive disorder or other indications ... should be alerted about the need to monitor patients

for the emergency of" certain specified symptoms, "as well as the emergence of suicidality, and

to report such symptoms immediately to healthcare providers.  Such monitoring should include

daily observation by families and caregivers.  Prescriptions for ABILIFY should be written for

the smallest quantity of tablets consistent with good patient management."

24.     While at Washington Adventist Hospital, Devin Bailey initially received a dosage

of 15mg of ABILIFY® daily, which was later increased to 20 mg daily.  On May 20, 2008,

Devin Bailey was discharged from Washington Adventist Hospital with directions to continue to

take 20 mg of ABILIFY® per day, along with Fluphenazine (Prolixin) to improve compliance.

25.     On July 7, 2008 and August 25, 2008, Devin Bailey later received additional

prescriptions for ABILIFY®, directing that he take two 15 mg tablets daily.  This 30 mg total

appears to be the maximum legal dosage possible for ABILIFY® prescriptions to human beings

in the United States, since Otsuka America and Bristol-Myers have acknowledged that "[t]he

9

safety of doses of ABILIFY oral or ABILIFY Injection above 30 mg/day has not been evaluated in clinical trials."

26.     On September 3, 2008, Decedent Devin Darrell Bailey applied for employment with Wackenhut and/or Wackenhut Services. By October 17, 2008, Decedent Devin Darrell Bailey was asked to complete and sign various Wackenhut Services employment forms, indicating his receipt of Wackenhut Services' policy on Standards of Business Ethics and Conduct, its Equal Employment Opportunity policy, and its "WSI Employee and/or Security Officer Handbook." That same day, Devin Bailey also completed and signed a W-4 Employee's Withholding Allowance Certificate. On October 20, 2008, Decedent Devin Darrell Bailey was given a test for illegal drugs, and a medical screening, although the medical screening appears to have been incomplete and was limited to a physical examination only.

27.     On October 27, 2008, Jimmie L. Brown, Wackenhut Services' Field Manager and Chief of Guards, sent Devin Bailey a letter, formally confirming "an offer of employment which has previously been discussed with you," for Wackenhut Services to hire Devin Bailey as a Security Officer. The letter noted Devin Bailey's acceptance of a part-time position at Wackenhut Services' U.S. Army contract located at WRAMC, and stated that Devin Bailey would initially receive an hourly rate of $10.00, with that his rate increasing to $19.43 per hour upon Decedent Bailey's successful completion of all required training and certification by the Government. The offer was expressly made contingent upon Devin Bailey's successful completion of certain specified items, including "weapons qualifications," and a background investigation that would include "criminal justice screening." Devin Bailey then completed Wackenhut Services' "New Hire Form" that same day, listed as an "Armed Security Guard."

28.     On November 4, 2008, Wackenhut's National Research Center prepared a

Background Screening Report on Devin Bailey, and forwarded this Report to Jimmie Brown at

Wackenhut Services via Website Delivery.  On Background Screening Report's very first page,

its Summary noted criminal history "hits" for Devin Darrell Bailey, received from Washington,

D.C., and described in more detail in the text of the Report.

29.     Wackenhut's Background Screening Report indicated that a "WARRANT" had

been issued on September 10, 2007, based on Devin Bailey's "FAIL[URE] TO APPEAR" in

court to answer two separate charges of "ASSAULT ON A POLICE OFFICER" and one charge

of "CARRY[ING A] DANGEROUS WEAPON."  The Report also described the disposition of

each of these charges as "UNDISPOSED," apparently meaning that an active warrant remained

outstanding for Devin Bailey's arrest, based on his failure to appear on these criminal charges of

assaulting two police officers, and carrying a dangerous weapon.

30.     After receiving this Background Screening Report, Wackenhut Services, on

information and belief, failed to contact the D.C. Superior Court, the U.S. Attorney's Office, or

the D.C. Metropolitan Police Department, to determine if there was in fact an active warrant for

Devin Bailey's immediate arrest, based on his failure to appear in court on these charges of

assaulting police officers and carrying a dangerous weapon.  On information and belief,

Wackenhut Services also failed to examine or review the D.C. Superior Court file containing

these charges of assaulting police officers and carrying a dangerous weapon.

31.     Instead, the very next day after this November 4, 2008 Background Screening

Report was prepared and sent to Mr. Brown at Wackenhut Services, Devin Bailey was given a

Firearms Qualification test by Wackenhut Services.  Wackenhut Services' Firearms

Qualification Record, dated November 5, 2008, indicates that Devin Bailey conducted target

11

range shootings that day, from five separate distances, and received a score of 233 out of 300, causing a scorer and range officer to sign off on Devin Bailey's Initial Qualification as proficient with firearms, subject to Semi-Annual Qualification thereafter.

32.     On information and belief, Wackenhut Services thereafter issued a gun to Decedent Devin Darrell Bailey, contrary to 18 U.S.C. § 922(g)(2), which declares that it is unlawful to provide a firearm to any person who is a fugitive from justice.

33.     If the agents or employees of Wackenhut Services had exercised ordinary care and examined the D.C. Superior Court file in which Devin Darrell Bailey was charged with assaulting police officers and carrying a dangerous weapon (Case No. 2007 CMD 8771), they would have also found in that file that Devin Bailey had previously been committed to a mental institution, pursuant to a court order, and that it was also unlawful under another provision of law, 18 U.S.C. § 922(g), to provide him with a firearm.

34.     Although it was hiring Devin Bailey as a security guard for the U.S. Army, Wackenhut Services also failed, on information and belief, to seek or obtain Devin Bailey's military service record, which as noted, would have indicated his administrative separation from the U.S. Navy, less than three years earlier, based on mental disorders that included "psychosis."

35.     On November 15, 2008, Devin Bailey received a "Diploma" from Wackenhut Services, declaring him a "graduate" of "the WSI Services, Inc. Security Officer Course," given at Fort Belvoir, Virginia. On November 17, 2008, Decedent Devin Darrell Bailey also completed various additional forms that Wackenhut Services asked him to fill out for the U.S. Office of Personnel Management, including a special Questionnaire for "Public Trust" Positions.

36.     On December 9, 2008, while working as a contract security officer for Wackenhut Services at WRAMC's 16th Street Gate at 16th and Elder Streets, N.W., Washington, D.C.,

Decedent Devin Darrell Bailey placed the firearm that had been issued to him by Wackenhut

Services into his mouth, and shot himself through the head while inside the guard shack. The

incident was recorded on surveillance video.

37.     On December 10, 2008, the Office of the Armed Forces Medical Examiner

performed an autopsy of Decedent Devin Darrell Bailey. Noting that "[t]he decedent had a

mental health history and had been prescribed Fluphenazine and Abilify," the autopsy declared

that Decedent Devin Darrell Bailey's death was a suicide.

## Causes of Action

## Count I – Wrongful Death

38.     Plaintiffs incorporate by reference all of the preceding paragraphs of this

Complaint as though fully set forth herein.

39.     At all times relevant hereto, Defendant Wackenhut Services, acting through its

employees and agents, each owed a duty to Devin Bailey and Plaintiff to possess and exercise

that degree of care required of other reasonable persons acting in the same or similar

circumstances.

40.     Defendant Wackenhut Services, acting through its employees and agents, and in

violation of a special relationship and duty of protection that it owed to Devin Bailey as its

employee, acted carelessly and negligently, and otherwise failed to exercise due care and act

reasonably, in at least the following particulars:

> a.  It failed to sufficiently read and understand, or take appropriate actions based
>
>     on Wackenhut's own Background Screening Report, and failed to perform
>
>     follow-up investigations as an ordinary, reasonably prudent person would
>
>     have done under the circumstances, and otherwise failed to reasonably discern

13

and address the pertinent fact that Devin Bailey was a prohibited person on at least two separate levels under the law, each of which barred him from legally possessing a firearm;

b.  It improperly and illegally allowed Devin Bailey to possess a firearm, and trained him and issued him a gun as a Wackenhut Services armed security guard, while profiting from his classification as an "armed" security guard under its contract with the U.S. Army, despite the fact that Devin Bailey was a person whom Wackenhut Services knew or should have known at the time was a prohibited person, incapable of legally possession a firearm; and

c.  It improperly and illegally allowed Devin Bailey to continue to retain the gun that Wackenhut Services had provided to him, and otherwise allowed Decedent Devin Darrell Bailey free and ready access to a firearm while he worked for Wackenhut Services, for a period of more than a month after it had received Wackenhut's Background Screening Report, and Decedent Bailey's legal disabilities against firearms possession were known or should have been apparent to any reasonably prudent person.

41.     Through these activities, and in its providing of Devin Bailey with a firearm, Defendant Wackenhut Services carried out activities that were abnormally dangerous, creating a serious risk of harm and death to Devin Bailey and other persons in and near the Walter Reed Army Medical Center, in violation of the Restatement (Second) of Torts, §§ 519 & 520.

42.     As a direct and proximate result of the foregoing violations of standards of care by Defendant Wackenhut Services, through its employees and agents, and Defendant Wackenhut Services' other negligent acts and omissions, and as a direct and proximate result of Wackenhut

14

Services and its employees and agents having engaged in abnormally dangerous activities, Devin Bailey died a needless death, and the conduct of Defendant Wackenhut Services and its employees and agents was a substantial factor in causing his death.

43.     By manufacturing and distributing ABILIFY® within the United States, despite its known risks of increasing suicidality in certain patients, Defendants Otsuka America and Bristol-Myers are liable for selling a product in a defective condition unreasonably dangerous to users and consumers, and particularly young adults such as Devin Bailey, based on his use of this product and including the reasonably foreseeable consequences of fluctuations or cessations in usage that can be expected to occur after initial utilization of this product by persons with mental health issues, particularly at high dosage levels. Defendants Otsuka America and Bristol-Myers are therefore strictly liable to Plaintiffs under Restatement (Second) of Torts § 402A.

44.     As a direct and proximate result of the foregoing negligence and abnormally dangerous activities of Defendant Wackenhut Services and its employees and agents, and the aforementioned activities of Defendants Otsuka America and Bristol-Myers, Plaintiff Sharon M. Rollins represents a named Wrongful Death beneficiary who has suffered loss of services and other damages allowed by the applicable Wrongful Death Act.

WHEREFORE, Plaintiff demands judgment against the Defendants in the amount set forth below.

### Count II – Survival Action on Behalf of Devin Darrell Bailey's Estate

45.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

46.     As a direct and proximate result of the above-described negligence and abnormally dangerous activity of Defendant Wackenhut Services and its employees and agents,

and as a result of the aforementioned activities of Defendants Otsuka America and Bristol-Myers, Plaintiff's decedent, Devin Bailey, suffered conscious pain and suffering, mental anguish, inconvenience, and discomfort between the time of his initial injury and the time of his death.

47.     In addition, Decedent Devin Darrell Bailey's Estate suffered economic loss occasioned by the loss of his future earnings, and other economic losses.

WHEREFORE, Plaintiff demands judgment against Defendants in the amount set forth below.

### Count III – Punitive Damages Against Wackenhut Services

48.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

49.     Upon information and belief, Wackenhut Services, by and through its employees and agents, and in its interactions with and relating to Devin Bailey as set forth above, and particularly during the periods of time from at least November 4, 2008 through and including December 9, 2008, Defendant Wackenhut acted recklessly toward the safety of Devin Bailey and other persons, took actions and failed to take actions in willful disregard of the rights of Devin Bailey and other persons, and engaged in conduct properly categorized as outrageous, by recklessly failing to heed the warnings in Wackenhut's own Background Screening Report on Devin Bailey, by recklessly failing to perform obvious follow up to that Report as needed, by recklessly training Devin Bailey in firearms and allowing him to continue to possess and have access to firearms even after his legal disqualifications became or should have been obvious but for Wackenhut Services' willful blindness or recklessness, by profiting under its government contract from Devin Bailey's classification as an armed security guard, and by placing a firearm in the hands of a 23-year old who was legally disqualified from possessing a firearm due to his

16

previous commitment to St. Elizabeth's Hospital and his ongoing status as a fugitive from justice, and then placing him at a location where he could endanger himself or other persons entering the gates and other secured areas of the Walter Reed Army Medical Center.

50.     WHEREFORE, Plaintiff demands judgment against Defendants in the amount set forth below.

## AD DAMNUM

51.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

WHEREFORE, Plaintiff demands judgment against each Defendant, and that each Defendant be ordered to pay, jointly and severally, the amount of One Million Dollars ($1,000,000.00) for the wrongful death of Devin Darrell Bailey and the amount of One Million Dollars ($1,000,000.00) under the Survival Act, together with pre-judgment and post-judgment interest thereon, and that Wackenhut Services also be ordered to pay punitive damages in the amount of Three Million Dollars ($3,000,000.00), and that this Court also award Plaintiff her costs and expenses of this action, attorney's fees to the extent warranted, and such other and further relief as the Court deems just and proper.

### Jury Demand

Plaintiff demands a trial by jury as to all issues herein presented.

Respectfully submitted,

Gregory S. Smith (D.C. Bar #472802)
Law Offices of Gregory S. Smith
913 East Capitol Street, S.E.
Washington, D.C. 20003
Telephone: (202) 460-3381
Email: gregsmithlaw@verizon.net
*Counsel for Plaintiffs*

17

# EXHIBIT 3

10 0047

FILED

JAN 1 1 2010

Clerk, U.S. District and
Bankruptcy Courts

**Karen Savignac**

| | |
|---|---|
| **From:** | sop@cscinfo.com |
| **Sent:** | Thursday, December 24, 2009 6:40 PM |
| **To:** | Karen Savignac |
| **Subject:** | Notice of Service of Process |

# Corporation Service Company ®

*CSC SameDay SOP and CSC PowerBrief clients, click here to receive and view your Service of Process documents now. For more information on instant access to your SOP, click Sign Me Up.*

**NOTICE OF SERVICE OF PROCESS**

Transmittal Number: 7260637
Date: 12/24/2009

Pursuant to client instructions, we are forwarding this summary and notice of Service of Process. The Service of Process document has been sent to the primary contact listed below.

| | |
|---|---|
| **Entity:** | Wackenhut Services, Inc. |
| **Entity I.D. Number:** | 0514714 |
| **Entity Served:** | Wackenhut Services, Inc. |
| **Title of Action:** | Sharon M. Rollins vs. Wackenhut Services, Inc. |
| **Document(s) type:** | Summons/Complaint |
| **Nature of Action:** | Wrongful Death |
| **Court:** | Superior Court, District Of Columbia |
| **Case Number:** | 0009131-09 |
| **Jurisdiction Served:** | District Of Columbia |
| **Date Served on CSC:** | 12/24/2009 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |

**Sender Information:**
Gregory S. Smith
202-460-3381

**Primary Contact:**
Ms. Karen  Savignac
The Wackenhut Corporation

**Copy of transmittal only provided to:**
Ms. Jackie Stankard

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the document(s) and taking appropriate action.

Please visit www.cscglobal.com for more information on CSC's Litigation and Matter Management services, including service of process (SOP) history, online acknowledgement of SOP, fully electronic scanned SOP and SOP package tracking information.

**CSC is SAS70 Type II certified for its Litigation Management System.**

**2711 Centerville Road   Wilmington, DE 19808**
**(888) 690-2882   |**

G4S Wackenhut is part of the G4S group of companies. This communication contains information which may be confidential, personal and/or privileged. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s), please note that any distribution, forwarding, copying or use of this communication or the information in it is strictly prohibited. Any personal views expressed in this e-mail are those of the individual sender and G4S Wackenhut does not endorse or accept responsibility for them. Prior to taking any action based upon this e-mail message, you should seek appropriate confirmation of its authenticity.



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

SHARON M. ROLLINS
   Vs.                             C.A. No.     2009 CA 009131 B
WACKENHUT SERVICES, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge BROOK HEDGE
Date:   December 8, 2009
Initial Conference: 9:00 am, Friday, March 12, 2010
Location:   Courtroom 517
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001                  Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

**CA Form 1**

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

Sharon M. Rollins, Individually and as
Personal Representative of the Estate of
Devin Darrell Bailey, *Plaintiff*

vs.

Civil Action No. 0000131-09

Wackenhut Services, Inc.
*Defendant*

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Gregory S. Smith
Name of Plaintiff's Attorney

913 East Capitol Street, S.E.
Address
Washington, D.C. 20003

(202) 460-3381
Telephone

Clerk of the Court

By _____ Deputy Clerk

Date 12-8-09

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

12/22/2009  12:36    3012128643              OTSUKA                                    PAGE  01/21

 CT Corporation

**Service of Process Transmittal**
12/21/2009
CT Log Number 515897664

**TO:**   Steven J. Wiesel, General Counsel
          Otsuka America Pharmaceutical, Inc.
          2440 Research Boulevard
          Rockville, MD 20850-

**RE:**   **Process Served in District of Columbia**

**FOR:**  Otsuka America Pharmaceutical, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Sharon M. Rollins, Individually and as Personal Representative for the Estate of Devin Darrell Bailey, Pltf. vs. Wackenhut Services, Inc, et al. including Otsuka America Pharmaceutical, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Initial Order, Addendum, Summons, Complaint |
| **COURT/AGENCY:** | Superior Court of the District of Columbia, DC Case # 2009 CA 009131 B |
| **NATURE OF ACTION:** | Wrongful Death - Product Liability-Drug Litigation-Seeking $3,000,000.00 - For Administering Abilify to their son knowing he already suffered from severe mental illness which worsened his depression and caused him to commit suicide - Date of Incident - December 9, 2008 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/21/2009 at 14:28 |
| **APPEARANCE OR ANSWER DUE:** | Within twenty (20) days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Gregory S. Smith Law Offices of Gregory S. Smith 913 East Capitol Street, S.E. Washington, DC 20003 202-460-3381 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 790198543885 Email Notification, Arthur Lyons arthur.lyons@otsuka.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Mark Diffenbaugh |
| **ADDRESS:** | 1015 15th Street, N.W. Suite 1000 Washington, DC 20005 |
| **TELEPHONE:** | 202-572-3133 |

# RECEIVED
## DEC 2 2 2009
### By  LEGAL AFFAIRS

Page 1 of  1 / MD

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents

12/22/2009  12:36    3012128643          OTSUKA                         PAGE  02/21



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

SHARON M. ROLLINS
Vs.                                            C.A. No.      2009 CA 009131 B
WACKENHUT SERVICES, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                            Chief Judge Lee F. Satterfield

Case Assigned to: Judge BROOK HEDGE
Date:  December 8, 2009
Initial Conference: 9:00 am, Friday, March 12, 2010
Location:  Courtroom 517
           500 Indiana Avenue N.W.
           WASHINGTON, DC  20001                          Caio.doc

12/22/2009  12:36    3012128643              OTSUKA                      PAGE  03/21

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

Sharon M. Rollins, Individually and as
Personal Representative of the Estate of
Devin Darrell Bailey, *Plaintiff*

vs.                                                    Civil Action No. 0008131-09

Otsuka America Pharmaceutical, Inc.
*Defendant*

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Gregory S. Smith
Name of Plaintiff's Attorney

913 East Capitol Street, S.E.
Address
Washington, D.C. 20003

(202) 460-3381
Telephone

Clerk of the Court.

By _____

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

 CT Corporation

**Service of Process Transmittal**
12/21/2009
CT Log Number 515897718

**TO:** Nicholas Calton, Legal Dept.
Bristol-Myers Squibb Company
345 Park Avenue
New York, NY 10154

**RE:** **Process Served in District of Columbia**

**FOR:** Bristol-Myers Squibb Company (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Sharon M. Rollins, Individually and as Personal Representative for the Estate of Devin Darrell Bailey, Pltf. vs. Wackenhut Services, Inc, et al. including Bristol-Myers Squibb Company, Dfts. |
| **DOCUMENT(S) SERVED:** | Initial Order, Addendum, Summons, Complaint |
| **COURT/AGENCY:** | Superior Court of the District of Columbia, DC<br>Case # 2009 CA 009131 B |
| **NATURE OF ACTION:** | Wrongful Death - Product Liability-Drug Litigation Seeking $3,000,000.00 - For Administering Abilify to their son knowing he already suffered from severe mental illness which worsened his depression and caused him to commit suicide - Date of Incident - December 9, 2008 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/21/2009 at 14:28 |
| **APPEARANCE OR ANSWER DUE:** | Within twenty (20) days after service of this summons upon you, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Gregory S. Smith<br>Law Offices of Gregory S. Smith<br>913 East Capitol Street, S.E.<br>Washington, DC 20003<br>202-460-3381 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 792170622191<br>Image SOP<br>Email Notification, Nicholas Calton nicholas.calton@bms.com<br>Email Notification, Ariel Quiros ariel.quiros@bms.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>Mark Diffenbaugh<br>1015 15th Street, N.W.<br>Suite 1000<br>Washington, DC 20005<br>202-572-3133 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 **SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

SHARON M. ROLLINS
   Vs.                           C.A. No.     2009 CA 009131 B
WACKENHUT SERVICES, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to: Judge BROOK HEDGE
Date:  December 8, 2009
Initial Conference: 9:00 am, Friday, March 12, 2010
Location   Courtroom 517
             500 Indiana Avenue N.W.
             WASHINGTON, DC 20001                  Caio.doc

**ADDENDUM TO INITIAL ORDER AFFECTING**
**ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties, (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

CA Form 1

## Superior Court of the District of Columbia

### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Sharon M. Rollins, Individually and as
Personal Representative of the Estate of
Devin Darrell Bailey, *Plaintiff*

vs.

Civil Action No. 0009131-09

Bristol-Myers Squibb Company
*Defendant*

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Gregory S. Smith
Name of Plaintiff's Attorney

913 East Capitol Street, S.E.
Address
Washington, D.C. 20003

(202) 460-3381
Telephone

Clerk of the Court

By:
Deputy Clerk

Date: 5 / 8 / 09

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPAÑOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.